## Philadelphia v. Hadley, City Controller.

*A. T. Ashton*, City Solicitor, *G. Coe Farrier* and *Ernest Lowengrund*, Assistant City Solicitors, for plaintiff.

Defendant, P. P.

FINLETTER, P. J., July 6, 1929.—The City of Philadelphia proposes to condemn certain properties for public use under the provisions of the Act of May 3, 1927, P. L. 508; and in that connection presented a petition, under the Act of May 21, 1921, P. L. 1054, to bring about the determination by the court of what part (if any) of the properties to be purchased might reasonably be expected to produce earnings sufficient to carry bonds upon which it is proposed to raise the money needed to pay for the purchased property.

It is required by the Act of 1921 *(supra)* that such a petition shall be made by the Mayor and "attested by the City Controller and by the head of the department of the city government having management of such improvements as to the *matters within their special knowledge and control.*"

The Mayor has signed and sworn to the petition; and it has been attested by the head of the proper department, but not by the Controller. That officer, upon presentation of the petition to him with a request that he attest it, declined to do so.

The City has caused a writ of alternative mandamus to issue, directed to the Controller, to compel his attestation. To this he returned that he cannot attest the petition because he has not sufficient knowledge of the facts needed as a basis for an opinion; and that, from what he does know of the subject, he could not attest the averments of the petition presented to him.

We have been referred by the plaintiff to many decisions in which the duties of the controller are defined, and the dividing-line between his ministerial and his judicial duties has been drawn with respect to city contracts, claims against the city and other subjects. Except in a general way, and to establish the principle that the duties of this office are statutory and that the language of the statutes in question must be the criterion of the decision, the cases cited are not determinative of the instant case.

The duty, the performance of which is sought to be enforced by this writ, is a new one created by the Act of 1921. The subject before us, therefore, is the interpretation of that statute.

Its pertinent provisions are:

"Section 1. Be it enacted, etc., That whenever the City of Philadelphia shall have incurred or is about to incur any debt or debts for, and the proceeds thereof shall have been or are about to be invested in, any public improvements of any character, or in the construction, purchase or condemnation of any public utility, or part thereof or facility therefor, which, either separately or in connection with any other public improvement or public utility, or part thereof, may reasonably be expected to yield revenue in excess of operating expenses sufficient to pay the interest and sinking fund charges thereon, the city may, at any time and from time to time, present its petition to any of the courts of common pleas of the county in which such city is situated for the purpose of having determined the amount of its debt which may be deducted from its indebtedness in ascertaining the borrowing capacity of the said city as provided in section 8, article IX of the Constitution of the State of Pennsylvania, as amended. The said petition shall contain an enumeration of any such public improvement or improvements, public utilities, part or parts thereof and facilities therefor, so reasonably to be expected to yield such revenue, the amount of indebtedness which shall have been incurred or is about to be incurred for such public improvement or improvements, public utilities, part or parts thereof and facilities therefor, the average rate of interest and sinking fund charges payable upon the indebtedness incurred by said city as to each of such improvements, public utilities, part or parts thereof and facilities therefor, and such other facts as may show or tend to show that the operation of the said improvements, public utilities, part or parts thereof and facilities therefor, whether operated separately or in connection with any other public improvement or public utility, or part thereof, may reasonably be expected to yield revenue in excess of operating expenses sufficient to pay the interest and sinking fund charges thereon, and together with such other information as may be pertinent to the ends of the inquiry. The petition herein above provided for shall be made and sworn or affirmed to by the mayor, and shall be filed by the city solicitor, having first been attested by the city controller and by the head of the department or other branch of the city government having the management of such improvements, as to the matters within their special knowledge or control, respectively."

The scheme of the act is plain: When a purchase of income-producing propery is contemplated, and an issue of municipal bonds is needed in that connection, it is important, under the amendment of Nov. 2, 1920, to article IX, section 8, of the Constitution, to know whether the property bought will be self-supporting. If it is, in whole or part, it is not to be included in the municipal debt, or only so to the extent that it will not carry the bonds issued. This question is to be determined by the Court of Common Pleas according to the procedure prescribed by the statute. This, it appears to us, presents an eminently practical and sensible plan. The facts are to be set out in a petition by the Mayor, as the executive head of the City, the data on the engineering side of the matter are attested by the head of the department, who presumably is familiar with the practical questions involved, while the City Controller is asked to give his attestation on the financial side.

The plaintiff emphasizes the fact that the question is for the court, and would draw the inference that this relieves the signers of the petition from the duty of forming any judgment on the proposition. True, the decision is ultimately for the court, but only so after the facts have been presented to it in such a way as to raise the question and give it jurisdiction; that is, by a petition containing all the pertinent data, averred by all the prescribed par-

ties to the petition. It is only when the petition so executed is presented that jurisdiction is acquired. In other words, the question must be raised by proper pleadings required by the statute before the court may undertake its determination. The act expressly so provides when it calls for a decision of the court "after hearing *the allegations* and proofs." The fact that the duty of deciding the question rests upon the court does not relieve the plaintiffs from asserting their claim in the prescribed form; that is, by petition duly attested.

The values involved may be, and in this instance are, large. The problems are both for the engineer and the financier. The court, if we understand the scheme of the act, is entitled to the averment, by all the responsible officials named in the statute, that the plan is practically feasible and financially sound, before engaging in any discussion of it. This is apparently what was intended when it was required that the engineer and the officer in charge of the city's finances shall attest "as to matters within their special knowledge and control."

The first question is whether or not the issuance of the bonds and the earning capacity of the property to be acquired with their proceeds are within the "special knowledge" and "control" of the City Controller? And the second question is, what sort of an attestation must be made by him?

Regarding the first question: It is assumed that the phrase "special knowledge" refers to knowledge the Controller has by virtue of his office. "Control" refers to his official power. As we have said, his office is statutory. We must look, then, to the statutes for the limits of his official knowledge and control.

A reading of the latest amendment of the charter of the City, the Act of June 25, 1919, P. L. 581, in which the duties of the City Controller are defined, shows the large part he has in the fiscal affairs of the City, and particularly in the care for the municipal debt. His estimates of the City's resources, of its assets and liabilities, are the bases for the annual budget he is required to estimate and report to the Mayor upon the borrowing capacity of the City; his estimates are also required in connection with the extinguishment of floating indebtedness, and he, with other officers, negotiates temporary loans. Finally, he is a member of the Sinking Fund Commission.

It is plain, then, that the finances of the City, and especially the subject of the municipal debt, are within his "official knowledge" and much of it within his official "control."

The subject, then, being within his "special knowledge and control," what sort of an attestation does the statute require? If the facts involved are merely statistical figures, as they appear upon his books, a mere balance sheet, his attestation would be purely ministerial, and the courts might by mandamus compel his attestation. But if the subject involves his financial judgment, he is beyond the reach of the court.

The plaintiff's position is that the duty in question is ministerial. Paragraph 8 of the petition avers:

"Your petitioner is advised by counsel, believes and therefore avers that the attestation provided for by the above-quoted part of section 1 of the Act of May 21, 1921, is a ministerial duty, enjoined upon the City Controller of the City of Philadelphia, and that his failure to so attest is illegal, wrongful and in violation of his duty as City Controller."

But obviously the attestation of the petition involves an exercise of skilled financial judgment. It is whether certain properties may in the future for fifty years be reasonably expected to yield a given return. The very phrase used shows that what is expected is an exercise of the *reason.* It is not a

statement of an existing fact. It is not a statement of the money value of a certain property today. The broker's ticker would tell him that. It is what, on a consideration of that which now exists and that which in the exercise of sound judgment is likely during the next fifty years to happen, will be the return on certain property. The mental operation involved is not that of the book-keeper who totals a column, but of the financial expert who exercises his judgment about future values.

We regard the determination of what 'a property may reasonably be expected to return during the next fifty years as a question requiring a nice exercise of judgment and great financial skill. The attestation of that judgment is not a ministerial act whose performance may be compelled by mandamus.

It is to be noted that the plaintiff, in its petition for the writ of mandamus, does not complain of the failure of the Controller to exercise his discretion, but, in effect, alleges that he has no discretion in the premises, and avers that "the attestation provided for in the Act of 1921 is a *ministerial duty*, enjoined upon the City Controller, and that his failure to so attest is . . . in violation" of this duty.

We do not, therefore, have the question of the failure of a judicial officer to render a decision. No doubt if, with a duty to decide, he declined to do so, he would be compelled to act. But that question is not before us. We are asked to compel him to attest as a ministerial act, and, as we have said, we do not regard the attestation to be ministerial.

We, therefore, overrule the demurrer.